IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| RANDOLPH COUNTY EQUINE ) <br> AND AGRICULTURAL ) <br> ASSOCIATION, INC., *et al.*, ) <br>   ) <br>   Plaintiffs, ) <br>   ) <br>   v. ) <br>   ) <br> UNITED STATES DEPARTMENT ) <br> OF AGRICULTURE, *et al.*, ) <br>   ) <br>   Defendants. ) | CIVIL CASE NO. 3:24-cv-202-ECM <br> [WO] |

**MEMORANDUM OPINION and ORDER**

**I. INTRODUCTION**

This case arises out of a loan dispute between Plaintiffs Randolph County Equine and Agricultural Association, Inc. ("RCEAA") and Stephanie Herren ("Herren")[1] (collectively, the "Plaintiffs"), and Defendants United States Department of Agriculture – Rural Development ("USDA") and Allen Bowen ("Bowen")[2] (collectively, the "Defendants"). The Defendants moved to dismiss, contending that the Plaintiffs failed to exhaust their administrative remedies, as required by 7 U.S.C. § 6912(e), before filing suit. (Doc. 18). For the reasons below, the Court agrees. The Defendants' motion to dismiss is due to be granted.

---

[1] Herren is the Director and President of RCEAA.

[2] Bowen is employed by the USDA and is the Community Programs Director for Alabama.

## II. JURISDICTION AND VENUE

The Plaintiffs claim the Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1361. The Defendants challenge the Court's subject matter jurisdiction on another ground, which is discussed below. Personal jurisdiction and venue are uncontested, and the Court concludes venue properly lies in the Middle District of Alabama. *See* 28 U.S.C. § 1391.

## III. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)[3] tests the sufficiency of the complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(A)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). At this stage of the proceedings, "the court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor." *Bailey v. Wheeler*, 843 F.3d 473, 478 n.3 (11th Cir. 2016).

"Exhaustion of administrative remedies is a matter in abatement that should be

---

[3] The Defendants move pursuant to Rule 12(b)(1), which allows a party to move for dismissal because the court lacks subject matter jurisdiction. Below, the Court determines that 7 U.S.C. § 6912(e) is nonjurisdictional. Accordingly, Rule 12(b)(1) is an improper vehicle to resolve the Defendants' motion. Instead, the Court analyzes it under Rule 12(b)(6). *See Ferrer v. Atlas Piles, LLC*, 586 F. Supp. 3d 1286, 1296 (S.D. Fla. 2022) (citations omitted).

raised in a motion to dismiss, or treated as such if raised in a motion for summary judgment." *Basel v. Sec'y of Def.*, 507 F. App'x 873, 874 (11th Cir. 2013)[4] (citing *Bryant v. Rich*, 530 F.3d 1368, 1374–75 (11th Cir. 2008)). "Thus, it is permissible for a district court to consider facts outside of the pleadings and resolve factual disputes so long as the factual disputes do not decide the merits and the parties are given sufficient opportunity to develop a record." *Id.* (citing *Bryant*, 530 F.3d at 1376).

## IV. BACKGROUND

To contextualize the Plaintiffs' factual allegations, the Court first provides a non-exhaustive overview of the USDA loan program underlying this dispute. The USDA, through its subagency, the Rural Housing Service,[5] administers the Community Facilities Direct Loan and Grant program. The program "provides affordable funding to develop essential community facilities in rural areas." (Doc. 18 at 2). Nonprofit organizations that wish to apply for such funding "must have significant ties with the local rural community" to ensure they "will carry out a public purpose and continue to primarily serve rural areas." 7 C.F.R. § 1942.17(b)(1)(ii). As part of the loan application process, "[a]pplicants must certify in writing . . . that the applicant is unable to finance the proposed project from their own resources or through commercial credit at reasonable rates and terms." 7 C.F.R. §

---

[4] Here, and elsewhere in this Opinion, the Court cites nonbinding authority. While the Court acknowledges that these cases are nonprecedential, the Court finds them persuasive.

[5] The Rural Housing Service is also known as "Rural Development."

1942.17(b)(3).  Once an application is approved and an agreement is signed, borrowers are required to repay their loans in accordance with the terms of the loan instruments.  If a borrower fails to properly repay a loan and "all reasonable efforts have failed to have the borrower voluntarily liquidate the loan through the sale of the property, voluntary conveyance, or by entering into an accelerated repayment agreement when applicable servicing regulations permit," the USDA has the right to foreclose on it. 7 C.F.R. § 1955.15.  In lieu of foreclosure, the USDA can approve a transfer of the loan to another party.  "Transfers to eligible applicants will receive preference over transfers to ineligible applicants if recovery to Rural Development is not less than it would be if the transfer were to an ineligible applicant." 7 C.F.R. § 1951.230(a)(3).  Parties affected by an adverse decision of the USDA have two options for administrative review: (1) an informal meeting with the agency, *see* 7 C.F.R. § 11.5(b), and (2) a hearing with the National Appeals Division, *see* 7 C.F.R. §§ 11.6, 11.8.

With that context, the Court turns to the Plaintiffs' allegations.  RCEAA, a charitable and educational program designed to serve the Randolph County community, submitted a loan application to the USDA on February 19, 2015, to finance a new facility. (Doc. 1 at 6, paras. 22, 25).  On August 20, 2015, RCEAA's application was approved, and it was granted a loan of $1,370,500. (*Id.* at 6, para. 26).  Due to higher-than-expected construction bids and a cost overrun during construction, two additional loans were issued over the course of the project for $176,000 and $458,000 respectively. (*Id.* at 6, paras. 27–

28). By March 2018, RCEAA had received $2,004,500 in loans. (*Id.* at 6, paras. 27–29). Due to unforeseen operating issues, the Plaintiffs failed to make full payment on the original loan, but they made payments on the two secondary loans. (*Id.* at 7, para. 30).

In swept Randolph County Agricultural Center, Inc. ("RCAC"), a nonprofit comprised in part of several disgruntled former RCEAA board members. (*Id.* at 7, paras. 31–32). Unlike RCEAA, RCAC is funded privately by RCAC leadership and not community-based or public funding. (*Id.* at 7, para. 35). Nor is there any indication that (1) RCAC would be unable to receive commercial funding for a project, (2) RCAC is registered in the IRS directory of tax-exempt organizations, or (3) RCAC has performed any community activities of note. (*Id.* at 7–8, paras. 36–39). Because of these facts, RCAC allegedly does not qualify as an eligible borrower under the terms of the loan given to RCEAA. (*Id.* at 8, para. 40).

Despite this purported ineligibility, on September 15, 2022, an individual associated with RCAC approached the Plaintiffs with an offer to buy RCEAA's property for $600,000 and transfer the outstanding loans to RCAC. (*Id.* at 8, para. 41). On April 25, 2023, seven months later, a representative of Bowen sent Herren a workout agreement, which stated that the delinquent amount of the loans totaled $338,428 and provided a list of actions the Plaintiffs could complete by June 17, 2023, to apply for debt settlement. (*Id.* at 8, para. 42). Under the agreement, Plaintiffs would need to wind up and disband RCEAA. (*Id.* at 8, para. 45).

Herren brought this agreement to RCEAA's board and on May 16, 2023, the board responded to Bowen's representative with an offer of its own: to buy the property for $600,100 and repay its outstanding debt. (*Id.* at 9, paras. 47–48). The Defendants declined this offer, threatened foreclosure, and informed the Plaintiffs they would not be able to participate in any public auction for the property. (*Id.* at 9, paras. 49–51).

On March 7, 2024, the USDA sent three letters to the Plaintiffs regarding their past due debt. (*See* doc. 18-4). The USDA informed the Plaintiffs that it would "submit the past due debt to the [Department of Treasury] for collection" if the Plaintiffs did "not pay the entire amount [] or take other action described" in the letter. (*Id.* at 2, 4, 6). Among the options available to the Plaintiffs was to "request a review if [they] believe the debt is not owed." (*Id.* at 3, 5, 7). The letter then described how the Plaintiffs could have the USDA's determination reviewed. (*Id.*).

On April 2, 2024, prior to exhausting any administrative remedy, the Plaintiffs brought the instant case, stating the following "causes of action": (1) "[r]equirement that a borrower be unable to obtain credit elsewhere," (2) "[r]equirement that the [USDA] prioritize eligible borrowers," (3) "[c]ompliance with Title IX," and (4) "[c]ompliance with the Equal Credit Opportunity Act." (Doc. 1 at 9–11). They seek injunctive relief to prevent the Defendants "and anyone acting in concert with them from taking any action to proceed with the consummation of foreclosure proceedings against RCEAA or of transfer proceedings that would transfer the [p]roperty and loans to RCAC." (*Id.* at 13, para. 72).

6

They further seek a declaratory judgment that any such proceedings would be unlawful. (*Id.* at 13–14).

On October 25, 2024, the Defendants moved to dismiss, arguing this Court lacks subject matter jurisdiction to hear the Plaintiffs' claims because they failed to exhaust administrative remedies before filing suit, as required by 7 U.S.C. § 6912(e). (*See* doc. 18). If the Court finds § 6912(e) nonjurisdictional, the Defendants claim the complaint should still be dismissed because the exhaustion requirement is nevertheless mandatory. Briefing on the motion is complete (*see* docs. 18, 25, 27, 37), and it is ripe for review.

## V. DISCUSSION

It is undisputed that the Plaintiffs did not pursue any administrative remedy, much less exhaust them. (*See generally* doc. 25). The disputed issue is whether this failure is fatal to their claims. The Court's analysis proceeds in two parts. First, the Court determines whether the exhaustion requirement in § 6912(e) is jurisdictional or not. After concluding it is not, the Court evaluates the implications of the Plaintiffs' failure to exhaust.

### A.   Nature of § 6912(e)

Congress often requires litigants to exhaust their administrative remedies prior to challenging agency action in federal court. It has done so with the USDA:

> Notwithstanding any other provision of law, a person shall exhaust all administrative appeal procedures established by the Secretary [of the USDA] or required by law before the person may bring an action in a court of competent jurisdiction against—

> (1) the Secretary;
>
> (2) the Department; or
>
> (3) an agency, office, officer, or employee of the Department.

7 U.S.C. § 6912(e). The effect of such exhaustion requirement depends on the nature of the statute. "[U]nder a jurisdictional statute[,] an exhaustion of administrative remedies requirement cannot be excused or waived, and a party's failure to exhaust serves as a jurisdictional bar." *Mahon v. U.S. Dep't of Agric.*, 485 F.3d 1247, 1262 n.13 (11th Cir. 2007) (citing *Weinberger v. Salfi*, 422 U.S. 749, 765–66 (1975)). By contrast, certain non-jurisdictional exhaustion statutes may sometimes be waived in unique circumstances. *Id.* (citing *Honig v. Doe*, 484 U.S. 305, 326–327 (1988)). While the Eleventh Circuit has not addressed whether § 6912(e) is jurisdictional, four other circuits have, each concluding that it is not. *See Munsell v. Dep't of Agric.*, 509 F.3d 572 (D.C. Cir. 2007); *Dawson Farms, LLC v. Farm Serv. Agency*, 504 F.3d 592 (5th Cir. 2007); *Ace Prop. & Cas. Ins. Co. v. Fed. Crop Ins. Corp.*, 440 F.3d 992 (8th Cir. 2006); *McBride Cotton & Cattle Corp. v. Veneman*, 290 F.3d 973 (9th Cir. 2002). The D.C. Circuit laid out the inquiry:

> The Supreme Court has noted that courts sometimes "confuse[] or conflate[]" two distinct concepts: "federal-court 'subject matter' jurisdiction over a controversy" and the "essential ingredients of a federal claim for relief." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 503 (2006). The jurisdiction of the federal courts is limited by the Constitution and statutes of Congress. U.S. Const. art. III, §§ 1, 2. A federal court must have not only jurisdiction over a live controversy between parties who are properly before the court, but the case must concern a "subject matter" with respect to which a federal court

8

> is competent to rule. *See Arbaugh,* 546 U.S. at 506. While Congress has the power to describe and circumscribe the jurisdiction of the federal courts, not every threshold requirement is jurisdictional. In other words, not every statutorily prescribed "ingredient-of-claim-for-relief" reflects a requirement of "subject-matter jurisdiction." *Id.* at 511. Thus, where congressional statutes create explicit threshold requirements, courts must determine whether those requirements are jurisdictional or merely elements of the underlying claim. "If the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue." *Id.* at 515–16 (footnote omitted). "But when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character." *Id.*
>
> In the case of [§ 6912(e)], Congress created a threshold requirement that plaintiffs exhaust administrative remedies before bringing an action in court. There is no doubt that this statutory requirement is mandatory, but there is also nothing to indicate that Congress meant to make the requirement jurisdictional. Under established precedent, we must assume that an exhaustion requirement is nonjurisdictional unless we find "sweeping and direct statutory language indicating that there is no federal jurisdiction prior to exhaustion." *Avocados Plus Inc. v. Veneman,* 370 F.3d 1243, 1248 (D.C. Cir. 2004) (internal quotation marks and citations omitted). Absent a clear direction from Congress, "the exhaustion requirement is treated as an element of the underlying claim." *Id.*

*Munsell*, 509 F.3d at 580. The D.C. Circuit proceeded to hold that the statute was nonjurisdictional for three reasons. First, the court noted the similarity between § 6912(e) and the statutory exhaustion requirement in the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), which the Supreme Court held is nonjurisdictional. *Id.* (citing *Woodford v. Ngo*, 548 U.S. 81, 101–102 (2006)). Second, the court found "it noteworthy that every other

circuit that has directly considered" the question "has found that [] § 6912(e) is nonjurisdictional." *Id.* (citing *Dawson Farms*, 504 F.3d 592; *Ace Prop.*, 440 F.3d 992; *McBride Cotton*, 290 F.3d 973). Finally, the court could discern "no clear, sweeping, or direct language within [§ 6912(e)] that would indicate a congressional intent to create a jurisdictional limit on the courts." *Id.* The Court finds the D.C. Circuit's analysis persuasive and therefore joins the great weight of federal courts in finding that § 6912(e) is not jurisdictional.

**B.     Effect of the Plaintiffs' failure to exhaust**

Because the Court is not jurisdictionally barred from hearing this case, it must determine whether § 6912(e)'s mandatory exhaustion requirement is excusable. The Plaintiffs argue that "even complaints that may not be fully administratively exhausted are subject to judicial review under certain circumstances." (Doc. 25 at 5). The Plaintiffs assert the Defendants should be "estopped from claiming that Plaintiffs have failed to fulfill their administrative exhaustion requirements," because the "Defendants actively hid information or misinformed Plaintiffs" about their appeal rights. (*Id.*). At least one circuit has held the exhaustion requirement can be excused in certain circumstances. *See Dawson Farms*, 504 F.3d at 606. This Court, however, disagrees. Turning again to the D.C. Circuit:

> As the Supreme Court has recently made clear, "courts have a role in creating exceptions" to a statutory exhaustion provision "only if Congress wants them to." *Ross v. Blake*, 578 U.S. 632, 639 (2016). "For that reason, mandatory exhaustion statutes . . . establish mandatory exhaustion regimes, foreclosing judicial discretion" to excuse the failure to exhaust, *id.*, even under

10

> "standard administrative-law exceptions" such as futility or hardship, *id.* at 642 n.2. Although judge-made exceptions of that kind are available in the case of a judge-made exhaustion obligation, when an exhaustion requirement is imposed by statute, the only question is whether *Congress* intended any "limits on a [litigant's] obligation to exhaust." *Id.* at 639.
>
> Congress did not intend any such limits under § 6912(e). The Supreme Court's decision in *Ross* makes that clear. *Ross* considered the Prison Litigation Reform Act's exhaustion requirement, which provides in relevant part that "[n]o action shall be brought with respect to prison conditions . . . by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Court concluded that the statute's "mandatory language means a court may not excuse a failure to exhaust." *Ross*, 578 U.S. at 639. The sole exception, the Court noted, would be if a prisoner could show, per the terms of the statute itself, that administrative remedies were not "available." *Id.* at 642.
>
> The language of § 6912(e) is equally mandatory and equally "rigorous." *Id.* at 639. Just as § 1997e(a) states that "[n]o action shall be brought . . . until" administrative remedies are exhausted, § 6912(e) provides that, "before [a] person may bring an action," she "shall exhaust all administrative appeal procedures established by the Secretary." If § 1997e(a) admits of no exception (other than the textual qualifier that remedies must be "available"), then § 6912(e) too admits of no exception. Indeed, we have already stated that "the language of § 6912(e) is very similar to" § 1997e(a). *Munsell*, 509 F.3d at 580. In *Munsell*, we held that § 6912(e) imposes a "mandatory, but nonjurisdictional [exhaustion] requirement," *id.* at 581, including for "constitutional claims," *id.* at 592. Although we had no occasion to decide whether § 6912(e)'s exhaustion rule could be subject to any court-made exception, *see id.* at 579, the answer must be no after *Ross*.

*Fleming v. U.S. Dep't of Agric.*, 987 F.3d 1093, 1098–99 (D.C. Cir. 2021). The Court is persuaded by the D.C. Circuit's analysis, which is grounded in Supreme Court precedent.

11

Because § 6912(e)'s text admits of no exceptions, the Plaintiffs' failure to exhaust administrative remedies cannot be excused by the Court.[6]

## VI. CONCLUSION

Administrative exhaustion is "required as a matter of preventing premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts with the benefit of its experience and expertise, and to compile a record which is adequate for judicial review." *Weinberger*, 422 U.S. at 765. Because the Plaintiffs failed to comply with this requirement, it is

ORDERED that the Defendants' motion to dismiss (doc. 18) is GRANTED, and this action is DISMISSED without prejudice.[7]

A separate Final Judgment will be entered.

DONE this 15th day of August, 2025.

/s/ Emily C. Marks
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE

---

[6] Even if the requirement were excusable by the Court, the Plaintiffs' estoppel argument would still fail. They claim the Defendants hid or misled them about their appeal rights, because the "Defendants' March 7, 2024 letters [] have no information regarding Plaintiffs' alleged ability to" pursue administrative remedies. (Doc. 25 at 4). A quick look at any of these letters, sent to the Plaintiffs less than a month before the instant action was filed, shows that is not the case. (*See* doc. 18-4) (notifying the Plaintiffs in bolded and capitalized text that they may request a review of the USDA's debt determination and informing them of the process to do so).

[7] Dismissal "without prejudice" is proper "for failure to exhaust administrative remedies." *See Miller v. Pryor*, 315 F. App'x 149, 150 (11th Cir. 2008).

12